UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY E. HILL, as Personal Representative
of the Estate of ROBERT DWAYNE HILL,
deceased, and ALBERT BURSEY,

        Plaintiffs,

v.                                        Case No. 10-11427

POLICE OFFICER JELANI DEW,              HON. AVERN COHN
POLICE OFFICER ADRIAN SINGLETON,
and POLICE OFFICER SHAWN GIRAUD,

        Defendants.

_____/

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 19)[1]

### I.  Introduction

This is a case under 42 U.S.C. § 1983.  Plaintiff Mary E. Hill, as personal

representative of the estate of Robert Dwayne Hill and plaintiff Albert Bursey are suing

defendants, City of Detroit police officers Jelani Dew and Adrian Singleton.[2]  The

incident involves the shooting death of Robert Dwayne Hill and the shooting of Albert

Bursey[3] by Dew and Singleton.  Plaintiff makes the following claims on behalf of Hill:

---

[1]Although originally scheduled for hearing, upon review of the parties' papers, the
Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ.
P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Plaintiffs also named police officer Shawn Giraud.  However, plaintiffs have
agreed to dismiss all claims against Giraud.  Accordingly, Giraud is DISMISSED.

[3]Plaintiffs' response addresses only claims related to Hill.  Moreover, defendants
say that they have not received medical records supporting Bursey's allegation that he
was shot.  Under these circumstances, Bursey's claims are DISMISSED WITHOUT
PREJUDICE.  Only Hill's claims are addressed in this decision.

    I.      Violation of § 1983 - unreasonable search and seizure, unlawful use of deadly force

    II.     Violation of § 1983, § 1985 - conspiracy

    IV.[4]   Gross Negligence, Assault and Battery, Wrongful Death

Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion will be denied.

## II. Background

The material facts as gleaned from the parties' papers follow.[5]

In the early morning hours of July 18, 2008, Hill was at the corner of Buena Vista Street and Appoline Street in Detroit. Hill, who was on a bike, was socializing with his friends, Bursey and Bursey's then-girlfriend, Shaneica Fitzgerald. They were outside of Fitzgerald's apartment building. Other unidentified people were also present in the area. At some point Hill took out a gun from a holster and showed it to Bursey and Fitzgerald and others nearby. He then placed it back into the holster. Apparently, the unidentified people ran away. According to Bursey, however, unidentified people returned a few the others returned the to area a few minutes later when they saw the gun was holstered. Someone, however, called the police.

Singleton and Dew responded to the area on a call of an armed man on a bike.

---

[4]Count III asserts state law claims on behalf of Bursey which, as explained above, are not addressed.

[5]Defendants submitted a statement of material facts not in dispute. Doc. 23. Plaintiff submitted a response and statement of additional material facts. Doc. 26. Neither party highlighted their exhibits. Moreover, defendants' brief cited no statutory or case law regarding any of Hill's claims.

2

What happened next is hotly contested among the parties.[6]

Singleton says when he approached the area he saw Hill with a gun in his holster.  Singleton saw Hill look at him over his shoulder, dismount the bike, and then point the gun at Singleton and Dew while the officers were still in the car.  Singleton shot Hill because he "pointed a gun at me."  Dew also shot Hill "because he had a weapon and was about to shoot us."

Bursey, however, says that when the police arrived, he, Hill and Fitzgerald were talking by Fitzgerald's parked car on Buena Vista.  Bursey was by the back passenger side near the sidewalk.  Hill was on his bike near the front driver-side of the car, on the street.  Bursey saw the police car run into the side of Hill's bike, pinning Hill between Fitzgerald's car and the police car.  Bursey saw Hill fall/jump/leap over the hood of Fitzgerald's car.  Bursey saw the police get out of the car and begin shooting Hill, as Hill was scrambling over the hood of the car.

Bursey further says that the office never announced themselves before they began shooting.  Bursey says he was grazed by the bullets and that Hill fell where Bursey was standing, behind the rear passenger side of the car.

Bursey further says that Hill did not have a gun in his hands because Hill had both hands on the handlebars.

Fitzgerald confirms Bursey's version of the events before the shooting, i.e. that they were taking by her car and Hill was on his bike.  She says that without warning, a police car pulled up and ran into Hill while he was on his bike.  The police car stuck Hill

---

[6]Singleton, Dew, and Bursey were deposed and their depositions are in the record.  Fitzgerald submitted an affidavit.

3

and knocked him onto the hood of her car.  As hill rolled off the hood, two police officers

got out of the car and started to shoot Hill.  They fired several shots and Hill fell to th

ground.

Fitzgerald also says that Hill did not point a gun nor pose a threat to others.  She

likewise says that prior to the shooting, the police did not identify themselves and did

not say anything before shooting.

Hill was shot five times.  The autopsy report shows that all five shots entered

from the posterior of his body.

Photos of the scene show Hills bike wedged between the police car and

Fitzgerald's.  Fitzgerald's car has bullet holes.

Plaintiff retained Dr. Werner Spitz as an expert.  Spitz opines that Hill was shot

while trying to get away over the hood of Fitzgerald's car.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that

there is "no genuine issue of material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine issue of

material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986); Telxon Corp. v. Federal Inc. Co., 309 F.3d 386, 391 (6th Cir.

2002).

The Court must decide "whether the evidence presents a sufficient disagreement

to require submission to a [trier of fact] or whether it is so one-sided that one party must

prevail as a matter of law." Wexler v. White's Furniture, Inc., 317 F.3d 564, 570 (6th Cir.

4

2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The Court will view "the evidence in the light most favorable to the nonmoving party and decide if it was sufficient to raise a genuine issue of material fact for the jury." Preferred Properties, Inc. v. Indian River Estates, Inc., 276 F.3d 790, 799 (6th Cir. 2002) (quoting EEOC v. Harbert-Yeargin, Ind., 263 F.3d 498. 510 (6th Cir. 2001)).  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

## IV.  Analysis

### A.  Count I - § 1983

Under § 1983, an individual may bring a private right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes.  Blessing v. Freestone, 520 U.S. 329, 340 (1997); Maine v. Thiboutot, 448 U.S. 1, 4 (1980).

To state a claim under 42 U.S.C. § 1983, plaintiff must show that defendants violated a federal constitutional or statutory right while acting under color of state law. Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir.2006).  There is no dispute as to the second element of this test.  Dew and Singleton were uniformed police officers responding to a call while on duty.  They plainly were acting under color of state law. The Court must determine only whether the evidence in the record would allow a reasonable jury to conclude that defendants violated Hill's Fourth Amendment rights.[7]  If

_____

[7]To the extent plaintiff claims a violation of Hill's Fourteenth Amendment rights, the Supreme Court has expressly held that "all claims that law enforcement officers

the Court finds a constitutional violation, the question then becomes whether the right

alleged to have been violated was clearly established at the time of the violation.

Harlow, 457 U.S. at 818, 102 S.Ct. 2727; Pearson, 129 S.Ct. at 815.  In making these

determinations on summary judgment, the Court must look at the facts in the light most

favorable to the non-moving party.

Dew and Singleton appear to contend that they are entitled to summary judgment

on plaintiff's § 1983 claim on the basis of qualified immunity.[8]  Generally, summary

judgment based on qualified immunity is proper if the officer was not on notice that his

conduct was clearly unlawful.  Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir.2002).

However, if genuine issues of material fact exist as to whether the officer committed

acts that would violate a clearly established right, then summary judgment is improper.

Poe v. Haydon, 853 F.2d 418, 425–26 (6th Cir.1988).  Qualified immunity is "an

entitlement not to stand trial or face the other burdens of litigation[.]" Mitchell v. Forsyth,

472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  "Through the use of

---

have used excessive force—deadly or not—in the course of an arrest, investigatory
stop, or other 'seizure' of a free citizen should be analyzed under the Fourth
Amendment and its 'reasonableness' standard, rather than under a 'substantive due
process' approach."  Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in
original).  Plaintiff's claim falls squarely within the holding of Graham.  At the time of the
shooting, Hill was a free citizen, not a pretrial detainees.  Thus, the Fourth Amendment,
not substantive due process, determines plaintiff's entitlement to relief.  See Graham,
490 U.S. at 395, 109 S.Ct. 1865; see also Slusher v. Carson, 540 F.3d 449, 454 (6th
Cir. 2008).

[8]Dew and Singleton did not cite any case law in their brief other than the
standard for summary judgment.  As one of the "issues presented," however, they argue
they are entitled to summary judgment because they "acted in good faith and in lawful
self defense."  The Court construes this as presenting a defense based on qualified
immunity.

6

qualified immunity, the law shields 'government officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir.2004) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)).  Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity.  Ciminillo v. Streicher, 434 F.3d 461, 466 (6th Cir.2006).

In determining whether a defendant is entitled to qualified immunity, the Court makes two inquiries: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right "clearly established" to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).  Although Saucier mandated that these questions be addressed in order, that requirement has since been relaxed.  See Pearson, 129 S.Ct. at 818 ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

With regard to the second step,

[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640, 107 S.Ct. 3034 (citations omitted).

Applying these principles, plaintiff argues that there is evidence in the record that

7

demonstrates the officers used excessive deadly force and thereby violated Hill's Fourth

Amendment rights.  In Tennessee v. Garner, the United States Supreme Court

established that "apprehension by the use of deadly force is a seizure subject to the

reasonableness requirement of the Fourth Amendment." 471 U.S. 1, 7, 105 S.Ct. 1694,

85 L.Ed.2d 1 (1985).  The Court explained that the reasonableness of the use of a

particular level of force is evaluated by balancing " 'the nature and quality of the

intrusion on the individual's Fourth Amendment interests against the importance of the

governmental interests alleged to justify the intrusion.' "  Id. at 8, 105 S.Ct. 1694

(quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110

(1983)) (further citations omitted).  The ultimate question is "whether the totality of the

circumstances justified a particular sort of search or seizure."  Id. at 8–9, 105 S.Ct.

1694.  Necessarily then, even when probable cause to seize a suspect exists, "an

officer may not always do so by killing him."  Id. at 9, 105 S.Ct. 1694.

    The Court agrees with plaintiff.  Upon examining the totality of the events on the

night of the shooting, a reasonable jury could conclude that the officers' use of deadly

force was objectively unreasonable.  Specifically, there is a factual dispute as to

whether Hill pointed a gun at Dew and Singleton.  Bursey and Fitzgerald say Hill did not

point a gun.  The officers contend otherwise.  Moreover, as explained in plaintiff's

papers, the physical evidence tends to corroborate plaintiff's version of the events.

Overall, there is a material question of fact as to the reasonableness of the use of fatal

force inasmuch as there is a question of fact as to whether Hill posed a threat.  Hill's

right to be free from deadly force absent posing a threat is clearly established.  See

Ciminillo v. Streicher, 434 F.3d 461, 468 (6th Cir. 2006) (stating that the court has

8

clearly established that a person has "a right not to be shot unless they are perceived as posing a threat to officers or others") (citing <u>Yates</u>, 941 F.2d at 447). "Taken in the light most favorable to the party asserting the injury, ... the facts alleged show [defendants'] conduct violated a constitutional right[.]" <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. 2151. Accordingly, Dew and Singleton are not entitled to qualified immunity on plaintiff's § 1983 claim under Count I.

### B.  Count II - Conspiracy

In Count II, plaintiff claims Dew and Singleton conspired to violate Hills constitutional rights. Dew and Singleton argue summary judgment is warranted because the complaint does not allege sufficient facts supporting such a claim. Putting aside that this argument is more appropriate under Rule 12(b)(6), this argument fails.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." <u>Revis v. Meldrum</u>, 489 F.3d 273, 290 (6th Cir. 2007). To prevail on a civil conspiracy claim, plaintiff must show that (1) a "single plan" existed, (2) Singleton and Dew "shared in the general conspiratorial objective" to deprive Hill of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to Hill. <u>Hooks v. Hooks</u>, 771 F.2d 935, 944 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." <u>Id</u>.

Here, the complaint contains the following allegations to support a conspiracy claim:

> 21. Following the unlawful and unconstitutional acts of Defendants Dew

9

and Singleton as described above, Defendant Police Officers Dew and Singleton
[together with . . . [9]] conspired to ratify the acts of Defendant Police Officers Dew
and Singleton and further to deny Robert Dwayne Hill and/or his Estate equal
protection of law.

      22. Immediately following their unlawful and unconstitutional shooting of
Robert Dwayne Hill, Defendants Dew and Singleton developed, articulated and
agreed upon a plan to cover-up their unlawful actions and/or to devise a falsified
version of events which would in their hopes exculpate them from their acts and,
consequently, deny Robert Dwayne Hill and/or his Estate certain constitutional
rights.

      23. The plan and/or conspiracy developed and agreed upon by the
Defendant Officers Dew and Singleton included providing a false and fictitious
story alleging that Robert Dwayne Hill "produced a weapon and pointed it at the
officers," prompting the Defendant Officers to shoot Mr. Hill "in fear of their
safety."

      24. At the scene of their crime and thereafter, the Defendant Police
Officers Dew and Singleton agreed to destroy and/or taint evidence, file false
reports regarding how and why they discharged their weapons and involve other
police officers in the conspiracy, . . . .

 . . . .

      26. The conspiracy between Defendants Dew, Singleton. . . included, but
is not limited to, agreeing to destroy and/or taint evidence, file false reports,
intimidate witnesses and to misdirect the investigation which was to be
conducted into the events described above.

      27. The conspiracy between Defendants Dew, Singleton . . . as well as the
acts that were subsequently committed to carry out the conspiracy, were done for
the purpose of depriving, either directly or indirectly, Robert Dwayne Hill and/or
his Estate and/or the persons belonging to his Estate of the equal protection of
the laws, or of equal privileges and immunities under the laws.

      28. The Defendants have in fact filed false reports, tainted evidence,
attempted to influence witnesses and attempted to improperly misdirect the
subject investigation, all in furtherance of the object of the conspiracy which was
to direct blame away from Defendants Dew and Singleton, ratify their unlawful
and/or constitutional acts, and deprive Robert Dwayne Hill and/or his Estate due
process.

(Complaint, Doc. 19-9).

     These allegations are sufficient to state a claim for conspiracy. Moreover, the

---

    [9]Although the complaint also alleged that Giraud was involved in the conspiracy,
the allegations as to him have been removed in light of his dismissal.

allegations are supported by the evidence in the record which, when viewed in a light most favorable to plaintiffs, would allow a reasonable juror to infer that defendant Officers Singleton and Dew conspired to deprive Robert Hill of his constitutional rights by falsifying reports and tainting and/or destroying evidence.  As explained in plaintiff's papers:[10]

> First, Robert's gun was found 31 feet away from where he was shot down. Officers Singleton and Dew maintain that Robert's gun flew out of his hand, or that he threw it over his head as he was falling as a result of being shot multiple times. . . . Further, Officer Dew testified that he "detained" Robert by handcuffing him after he was shot, and that in order to do so he had to turn Robert over onto his front, and then turn him back, and then stayed there until other officers arrived at the scene.  Officer Singleton claimed that he never came within 7 feet of Robert after Robert was shot down.  However, Officer Geraud testified in deposition that, when he first arrived at the scene, Officer Dew and Officer Singleton were only a few feet away from each other.  (Geraud Deposition, pg 39; Doc 19-8). When viewed in a light most favorable to plaintiffs, these facts could lead a reasonable juror to infer that the Officers Dew and Singleton had concocted a story to justify their unreasonable shooting of Robert; that Officer Dew retrieved Robert's gun from the holster and that the officers then placed the gun to make it seem that Robert had the gun unholstered when the officers shot him.

> Furthermore, . . . Given the number of bullets in the officers' guns after the shooting, the evidence technicians should have found 14 bullet casing[s]. However, only 10 casings were recovered.  The casing recovered on the other side of Buena Vista Street indicates that the location of the officers when they were firing the shots may not match up to the version of events they wrote in their reports and testified to.  This evidence, viewed in a light most favorable to plaintiffs, could lead a reasonable juror to conclude that the officers moved and/or removed bullet casings from the scene and that the physical evidence at the scene of the crime had been tampered with.  Moreover, the officers' version of how the shooting occurred [appears to differ] with the autopsy report, which unequivocally shows that Robert was shot 5 times in the back.  Yet, Officers Dew and Singleton obstinately maintain that they shot Robert in the front, center mass. The discrepancy between the autopsy report and the officer's version of events could lead a reasonable juror to conclude that the officers fabricated their version of events to make it seem like the shooting was justified, and thus

---

[10]The Court has removed the argumentative language from plaintiff's brief.

conspired to falsify reports by giving a concocted version of events.

Plaintiff's brief at p. 13-14.  Doc. 25.

Overall, the contours of a conspiracy claim have been plead and neither dismissal or summary judgment is appropriate.

### C.  Count IV - State Law Claims

Under Count IV, plaintiff asserts several state law claims, including gross negligence, assault and battery, and wrongful death.  Resolution of these state law claims requires application of Michigan law on governmental immunity.  Michigan courts use different tests for governmental immunity depending on whether the claim asserted sounds in negligence or intentional tort.  Odom v. Wayne County, 482 Mich. 459, 470–71 (2008).  Regardless of the type of claim asserted, a defendant bears the burden of establishing their entitlement to official immunity from a plaintiff's state law claims.  Id. at 479, 760 N.W.2d 217.

Dew and Singleton argue that summary judgment is appropriate on plaintiff's gross negligence claim because they are entitled to governmental immunity.  Under M.C.L. § 691.1407, employees of a governmental agency are immune from tort liability if (1) they were acting or reasonably believed they were acting within the scope of their official authority; (2) the governmental agency is engaged in the exercise or discharge of a governmental function; and (3) their conduct does not amount to gross negligence that is the proximate cause of the injury or damage.  Odom, 482 Mich. at 470, 760 N.W.2d 217. Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  M.C.L. § 691.1407(7)(a); Maiden v. Rozwood, 461 Mich. 109, 122–23, 597 N.W.2d 817 (1999).

12

Here, viewing the facts in the light most favorable to plaintiff, a reasonable jury could conclude that Dew and Singleton were grossly negligent in the manner in which they shot Hill and this alleged gross negligence proximately caused his death. Dew and Singleton's summary judgment motion on this issue raises the same defenses discussed and rejected above in the Court's analysis of plaintiff's Fourth Amendment claim. Those defenses are similarly unavailing here. See, e.g., Yates v. City of Cleveland, 941 F.2d 444, 447 (6th Cir. 1991) ("An officer who intentionally enters a dark hallway in the entrance of a private residence in the middle of the night, and fails to give any indication of his identity, is more than merely negligent."). Whether Dew and Singleton's conduct constitutes gross negligence under Michigan law is a fact question for the jury. As such, summary judgment is not warranted.

As to plaintiff's assault and battery claim, an assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." People v. Nickens, 470 Mich. 622, 628 (2004)). Battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." Id.

Dew and Singleton argue they are immune from plaintiff's assault and battery claims because they were acting in good faith when they shot and killed Hill. In Odom,, supra, the Michigan Supreme Court held that the scope of governmental immunity from intentional torts—e.g. assault and battery—under Michigan law is governed by the Court's previous decision in Ross v. Consumers Power Co., 420 Mich. 567, 363 N.W.2d 641 (1984). Ross extends immunity to governmental employees where the employee was acting within the scope of his or her authority, in good faith, and was performing

13

discretionary acts.  See Grawey v. Drury, 567 F.3d 302, 315–16 (6th Cir. 2009).  In

Odom, the Michigan Supreme Court explained that "there is no immunity when the

governmental employee acts maliciously or with a wanton or reckless disregard of the

rights of another."  Odom, 482 Mich. at 474 (emphasis omitted); accord Flones v.

Dalman, 199 Mich. App. 396, 401, 502 N.W.2d 725 (1993).  Unlike qualified immunity

under federal law, "[t]he good faith element of the Ross test is subjective in nature.  It

protects a defendant's honest belief and good-faith conduct with the cloak of immunity

while exposing to liability a defendant who acts with malicious intent."  Odom, 482 Mich.

at 481–82.  However, where a defendant's conduct is objectively unreasonable, the jury

may infer bad faith.  See id. at 475 ("[W]ilfulness and wanton misconduct is made out

only if the conduct alleged shows an intent to harm, or if not that, such indifference to

whether harm will result as to be the equivalent of a willingness that it does."); accord

Grawey, 567 F.3d at 315–16

       Again, viewing the evidence in the light most favorable to plaintiff, a reasonable

jury could conclude that Dew and Singleton's actions on July 18, 2008 were not taken in

good faith.  According to Bursey and Fitzgerald, Dew and Singleton shot at Hill, who

was not brandishing a gun at the time, and did so without announcing themselves as

law enforcement.  At a minimum, a jury could determine that such conduct

demonstrates a "reckless disregard" for Hill's right to be safe and secure in his person.

home.  Police officers who demonstrate a reckless disregard or indifference to another's

rights do not act in good faith.  Odom, 482 Mich. at 475.  Accordingly, summary

14

judgment is not warranted on plaintiff's assault and battery claim.[11]

### V.  Conclusion

For the reasons stated above, defendants' motion for summary judgment is

DENIED.

SO ORDERED.

 s/Avern Cohn                                       
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  October 24, 2011


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 24, 2011, by electronic and/or ordinary mail.

 s/Julie Owens                       
Case Manager, (313) 234-5160

---

[11]The same is true of plaintiff's claim for damages under Michigan's Wrongful Death Statute, M.C.L. § 600.2922.

15